UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BYD SPORTS, LLC,
BYD MANAGEMENT, LLC,

                                    Plaintiffs,

        -against-

DON KING,
DON KING PRODUCTIONS, INC.,
DOE CORPORATIONS 1-10,
DOE BENEFICIARIES 1-10,

                                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __12/1/2025__

24 Civ. 9335 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs, BYD Sports, LLC and BYD Management, LLC, bring this action against

Defendants, Don King, Don King Productions, Inc. ("DKP"), Doe Corporations 1–10, and Doe

Beneficiaries 1–10, alleging, *inter alia*, defamation, tortious interference with economic

relations, and breach of contract. *See generally* Third Am. Compl. ("TAC"), ECF No. 31.

Defendants move to dismiss or to transfer this matter to the U.S. District Court for the Southern

District of Florida. Mot., ECF No. 42. For the reasons stated below, Defendants' motion to

transfer is granted.

## BACKGROUND[1]

BYD Sports, LLC and BYD Management, LLC are both Virginia limited liability

companies with a sole member, Cecil Miller, who is an entertainment manager residing in

Virginia. TAC at 10, ¶ 1. Miller conducts a substantial amount of business in New York and

with New York-based clients. *Id.* at 10; *see id.* ¶¶ 1–5. King, a boxing promoter, is a Florida

---

[1] Unless otherwise noted, these facts are taken from Plaintiffs' third amended complaint, *see generally* TAC, which the Court must accept as true for the purposes of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

resident and the chief executive officer of DKP, a Delaware corporation with its principal place of business in Florida. *Id.* at 1, 11, ¶ 7.  King and DKP conduct some of their business with New York-based clients. *Id.* at 10–11.  The parties have previously worked together to put on boxing events. *See id.* ¶¶ 7–9.

In or after August 2021, King told Miller that he was putting together "Rumble in the Jungle 2," an event meant to commemorate the fiftieth anniversary of the 1974 boxing match between Muhammad Ali and George Foreman. *Id.* ¶ 10.  Miller expressed excitement at the opportunity and told King to keep him updated. *Id.* ¶ 11.  Months later, Miller asked King for an update on the plans for the event, and King told him that not much progress had been made. *Id.* ¶¶ 14–15.  Inferring that King could use his assistance, Miller offered to help him put on the event. *Id.* ¶ 15.  King displayed interest but told Miller he wanted a proposed deal in writing. *Id.*

In August 2023, Miller sent King his proposal, which envisioned a fifty-fifty split between the parties. *Id.* ¶ 16; *see* ECF No. 6-3[2] (proposed agreement).  King's team acknowledged receipt of the proposal but did not take further action on it.  TAC ¶ 16.  King continued to express his support for the event and asked Miller for progress reports, and Miller proceeded to procure sponsors and select a location, going so far as to enter a memorandum of understanding with another event company to host a series of boxing fights for the event in Nigeria. *Id.* ¶¶ 17, 19–22, 25–26.  Then, between July and October 2024, King stopped responding to Plaintiffs' phone calls and emails, leading Plaintiffs to learn that King did not, in fact, own the rights to "Rumble in the Jungle." *Id.* ¶¶ 29–30.  Accordingly, Plaintiffs decided to

---

[2] Despite the Court's directions, ECF No. 30-2, Plaintiffs did not attach their exhibits to the operative, third amended complaint, *see* TAC.  Accordingly, the Court refers to the exhibits attached to Plaintiffs' first amended complaint at ECF No. 6.

change the name of the event to "Freedom Belt" and to proceed without King's participation. *Id.* ¶¶ 30–33.

In late October 2024, days before tickets for the event were supposed to go on sale, King called Miller, claiming not to know about the event and insisting that it be shut down. *Id.* ¶¶ 32, 34. On October 21, King and DKP sent Miller a letter claiming that they never authorized Miller to organize the event under the guise of being affiliated with King or DKP, and demanding that Miller cease and desist from holding the event. *Id.* ¶¶ 34–36; *see* ECF No. 6-11 (cease-and-desist letter). King sent the letter to Nigerian state officials, who had invited Miller and King to host the event there. TAC ¶¶ 28–29, 36; ECF No. 6-8. King also posted the letter on his social media platforms. TAC ¶ 36. As a result, the Nigerian state officials canceled the event, and an Amazon affiliate that was supposed to stream the event terminated its relationship with Plaintiffs. *Id.* ¶¶ 37, 39; ECF No. 31-1. Plaintiffs allege that the publicly posted cease-and-desist letter continues to harm their reputation in the boxing and music industries. TAC ¶ 40.

Plaintiffs filed this action on December 12, 2024. ECF No. 1. Before the Court is Defendants' motion to dismiss Plaintiffs' third amended complaint for improper venue and failure to state a claim or, in the alternative, to transfer this action to the U.S. District Court for the Southern District of Florida. Mot.; *see also* Mem., ECF No. 43; Opp., ECF No. 44; Reply, ECF No. 45.

## DISCUSSION

I.      Venue

Defendants argue that venue is not proper in this District because Defendants do not reside here, and "all of the significant events and omissions material to Plaintiffs' claims . . . occurred in Florida." Mem. at 1. Plaintiffs contend that Defendants are judicially estopped from

contesting venue and that, even if estoppel does not apply, venue lies in this District pursuant to a valid forum selection clause and because "a substantial part of the events giving rise to [Plaintiffs'] claim[s] occurred in this District and the harm was felt here." Opp. at 18–25.

A.  Judicial Estoppel

Judicial estoppel "prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). The party invoking judicial estoppel must demonstrate that "(1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Id.* (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)).

Plaintiffs contend that Defendants are judicially estopped from contesting venue because Defendants have brought and defended multiple lawsuits in which they have argued that venue is proper, or even mandatory, in this District. Opp. at 19–22 (listing cases). The Court disagrees. According to Plaintiffs, venue is proper in this District under 28 U.S.C. § 1391(b)(2) and a forum selection clause. *See* TAC at 10; Opp. at 19. Section 1391(b)(2) allows a party to bring a civil action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). In other words, the issue of venue under Section 1391(b)(2) is a fact-specific inquiry, which means that a venue may be appropriate for one matter but not for another, even if both matters involve the same parties. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005) (explaining that § 1391(b)(2) requires a court to assess "the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the

forum," not just the "number of contacts" a party has in a location).  Plaintiffs make no arguments that the nature of the claims and specific events or acts of this case as it relates to venue are similar to those in previous cases where Defendants claimed venue was proper in this District.  *See generally* Opp. at 20–22.  Similarly, because none of the cases Plaintiffs cite "raised, let alone decided," venue based on the same forum selection clause between the same parties and under the same factual circumstances as here, *Donnay USA Ltd. v. Donnay Int'l S.A.*, 705 F. App'x 21, 26 (2d Cir. 2017), judicial estoppel does not apply.

### B.  Forum Selection Clause

Venue "may be created by the contractual agreement of the parties."  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Wynn Las Vegas, LLC*, 509 F. Supp. 3d 38, 50 n.6 (S.D.N.Y. 2020) (citation omitted).  To determine whether a forum selection clause is enforceable, a court analyzes "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, . . . and (3) whether the claims and parties involved in the suit are subject to the forum selection clause."  *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 343 (S.D.N.Y. 2020) (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)).  "'If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable,' and 'a party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"  *Id.* (alteration adopted) (quoting *Martinez*, 740 F.3d at 217).

Plaintiffs argue that Defendants are bound by a forum selection clause contained in a 2021 promotional agreement between DKP, boxer Alonzo Butler, and Miller, Butler's manager.

5

Opp. at 18–19; *see* ECF No. 6-1 at 9 (the promotional agreement).  The agreement, which Plaintiffs represent is the "only signed document" between the parties, Opp. at 18, states that Butler and Miller "irrevocably submit[] . . . to the jurisdiction of the United States District Court, Southern District of New York," and that "any action or proceeding brought by [Butler or Miller] arising out of or in any way related to [the a]greement or the [boxing] Bouts [Butler participates in] shall be brought only in the [Southern District of New York]," ECF No. 6-1 at 5–6.

The claims here, which concern whether King and Miller contracted to stage a commemorative boxing event in Nigeria and whether King then defamed Miller by publicly disavowing the event, are beyond the scope of a promotional agreement that concerns a particular boxer.  And, although Plaintiffs interpret the promotional agreement to represent a "meeting of the minds between the parties . . . that disputes regarding them would be held in [this District]," Opp. at 18, they cite no law in support of their interpretation.  Because Plaintiffs' claims are not encompassed by the forum selection clause, the clause is not enforceable here.

C.  Venue Generally (28 U.S.C. § 1391(b))

Under 28 U.S.C. § 1391(b), a civil action may be brought in:  (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;" (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated;" or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  For purposes of § 1391(b)(2), substantiality "is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by

6

simply adding up the number of contacts." *Daniel*, 428 F.3d at 432–33. "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Id.* at 433. Importantly, § 1391(b)(2) "does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred," and venue may lie in multiple districts. *Id.* at 432 (citation omitted).

No Defendant resides in this District, so the question is whether "a substantial part of the events or omissions giving rise to [Plaintiffs'] claim[s] occurred here." 28 U.S.C. § 1391(b)(2). According to Plaintiffs, venue lies in this District because: (1) Defendants' cease-and-desist letter was "targeted" toward Plaintiffs' "business interests and media partnerships," which include "New York-based entities . . . and major social media platforms," Opp. at 19; *see also* TAC at 4–5; (2) Defendants published their allegedly defamatory statements on New York-based social media platforms, and the statements were read by people and businesses residing in or having business ties to New York, TAC at 6–7; (3) the cease-and-desist letter had a "substantial impact" in this District, *id.* at 9; and (4) Defendants have "a substantial presence" in this District's entertainment industry and have "repeatedly engaged in business dealings, sponsorship negotiations, and contractual discussions within this District," *id.* at 7.

The Court is not persuaded. Defendants, who reside in Florida, sent the cease-and-desist letter, which concerned Plaintiffs' activities in Nigeria, to Plaintiffs—citizens of Virginia—and a Nigerian government official. *Id.* at 10, ¶ 36; ECF No. 6-11; *cf. Boehner v. Heise*, 410 F. Supp. 2d 228, 240 (S.D.N.Y. 2006) (finding that venue was situated in New York when "the subject of the [allegedly defamatory] letter refer[ed] to activities taking place in New York, by a company headquartered in New York, and the action requested in the letter [wa]s to be taken in New

7

York").  The primary consequence of the cease-and-desist letter was the cancellation of the boxing event in Nigeria.  TAC ¶ 37.  Although Plaintiffs allege that there were ancillary consequences bearing connection to New York—that one New York-based media company canceled its relationship with Miller and that some individuals from New York-based companies have not returned his calls since the letter went out, *id.* ¶¶ 8, 39–40—this is not enough to establish that a "substantial part of the events or omissions giving rise to [Plaintiffs'] claim[s] occurred" in this District, 28 U.S.C. § 1391(b)(2); *see also Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 352 (S.D.N.Y. 2003) (allegations that a plaintiff's New York business "was somehow peripherally affected by" the alleged wrongdoing do not establish venue); *Astor Holdings, Inc. v. Roski*, No. 01 Civ. 1905, 2002 WL 72936, at *9 (S.D.N.Y. Jan. 17, 2002) (describing the "potential for unbounded venue if the courts were to find venue regardless of where the [challenged] acts occurred, based solely on the existence of economic harm felt" in a district).

Nor did Defendants "target" this District when they posted the cease-and-desist letter on websites operated by global social media companies.  *See Abalu v. Soc'y of Human Res. Mgmt.*, No. 24 Civ. 5917, 2025 WL 1019199, at *14 (S.D.N.Y. Apr. 4, 2025) (stating that "merely pleading the defendant had a website which internet users in New York could access" is not sufficient to establish venue there (citation omitted)); *RLP Ventures LLC v. All Hands Instruction NVP*, No. 18 Civ. 3988, 2019 WL 1316030, at *6 (S.D.N.Y. Mar. 22, 2019) ("[C]reating a website, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state." (citation omitted)).  Even if Defendants have "a substantial presence" in New York's entertainment industry, such a broad assertion about Defendants' participation in this District's

8

economic life does not establish that the District bears a "close nexus" to Plaintiffs' claims, as necessary to establish venue under § 1391(b)(2). *Daniel*, 428 F.3d 433.

The Court finds, therefore, that venue does not lie in this District.

II.       Venue Transfer (28 U.S.C. § 1406)

When venue does not lie in a district, a court may, "if it be in the interest of justice," transfer the action "to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a); *see also* Fed. R. Civ. P. 12(b)(3). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel*, 428 F.3d at 435. "In general, because of the possibility of hardship from dismissal, courts usually find transfer to be in the interest of justice." *Lama v. New Century Found.*, No. 19 Civ. 2169, 2019 WL 7599899, at *8 (S.D.N.Y. Oct. 10, 2019) (alteration adopted) (citation omitted), *report & recommendation adopted*, No. 19 Civ. 2169, 2019 WL 13368587 (S.D.N.Y. Oct. 28, 2019).

Defendants ask that this matter be transferred to the U.S. District Court for the Southern District of Florida, "where King resides, and DKP has its principal place of business, and where a substantial part of the material acts that purportedly give rise to Plaintiffs' claims took place." Mem. at 11. Because at least some of Plaintiffs' allegations may be viable, *cf. Daniel*, 428 F.3d at 436 (explaining that courts "will not waste judicial resources by transferring a case that is clearly doomed" (citation omitted)), and because this case could have been brought in the Southern District of Florida, *see* 28 U.S.C. § 1391(b)(1), the Court grants Defendants' motion to transfer it there.

## CONCLUSION

For the foregoing reasons, Defendants' motion to transfer this action to the U.S. District Court for the Southern District of Florida is GRANTED, and their motion to dismiss under

Federal Rule of Civil Procedure 12(b)(3) is DENIED.  Because the Court transfers the action, it declines to rule on Defendants' motion to dismiss for failure to state a claim.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 42 and to TRANSFER this case to the U.S. District Court for the Southern District of Florida.

SO ORDERED.

Dated: December 1, 2025
      New York, New York

_____
ANALISA TORRES
United States District Judge